# UNITED STATES DISTRICT COURT
## DISTRICT OF MAINE

| | | |
|---|---|---|
| DIANA L. MALLARD, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:14-cv-00342-JAW |
| | ) | |
| MEGAN BRENNAN, | ) | |
| POSTMASTER GENERAL | ) | |
| | ) | |
| Defendant. | ) | |

## AMENDED[1] ORDER ON DEFENDANT'S MOTION TO DISMISS

The Postmaster General of the United States Postal Service, Megan Brennan, moves to dismiss Diana Mallard's three-count retaliation lawsuit. Ms. Mallard is an employee of the United States Postal Service, and asserts retaliation in violation of the federal Whistleblower Protection Act, the federal False Claims Act, and Maine's Whistleblower Protection Act. Concluding that none of these statutes provides a viable basis for a retaliation lawsuit by a Postal Service employee against her employer, the Court grants the Postmaster General's motion.

## I. BACKGROUND

On August 29, 2014, Diana Mallard filed a complaint against Patrick R. Donahoe in his then-capacity as the Postmaster General (Postmaster) of the United

---

[1] This Amended Order corrects typographical errors contained in the Order docketed at ECF No. 13. The Amended Order corrects the docket number on page 1 from 2:14-cv-00132-JAW to 1:14-cv-00132-JAW and removes from page 2 at the end of the first paragraph the words "On February 3, 2015, the Court granted".

States Postal Service (Postal Service)[2], containing three counts: (1) retaliation under the federal Whistleblower Protection Act (WPA), (2) retaliation under the Maine Whistleblower Protection Act (MWPA), and (3) retaliation under the False Claims Act (FCA). *Pl.'s Compl. for Retaliation* (ECF No. 1). On November 24, 2014, the Postmaster filed a motion to dismiss. *Def.'s Mot. to Dismiss the Compl.* (ECF No. 6) (*Def.'s Mot.*). Ms. Mallard responded on December 22, 2014. *Pl.'s Mem. of Law In Opp'n to Def.'s Mot. to Dismiss* (ECF No. 9) (*Pl.'s Opp'n*). The Postmaster replied on December 30, 2014. *Def.'s Reply in Further Support of Mot. to Dismiss the Compl.* (ECF No. 10) (*Def.'s Reply*). On February 3, 2015, the Court granted

## II. THE ALLEGATIONS AND THEORIES OF ACTION IN THE COMPLAINT

### A. The Factual Allegations

The Court accepts the following facts from the Complaint as true for the purposes of this Order:

Ms. Mallard, a resident of Skowhegan, Maine, began working for the Postal Service in 1987. *Compl.* ¶¶ 1, 5. On July 23, 2012, the Postal Service assigned Ms. Mallard as the Officer in Charge at the post office in Unity, Maine. *Id.* ¶ 6. Prior to the Unity assignment, Ms. Mallard worked as a level 15 postmaster in Corinna, Maine, where she enforced rules regarding time recording, and was unpopular with some of the mail carriers as a result. *Id.* ¶¶ 7, 9, 10. In August 2013, Ms. Mallard

---

[2]     On February 3, 2015, the Court granted the Postmaster's motion to substitute Megan Brennan as the Defendant in this case. *Mot. to Substitute* (ECF No. 11).

was removed from her position at the Corinna post office and returned to Unity. *Id.* ¶ 30.

On July 25, 2013, she learned that one of the carriers, Jean Asadoorian, had made a threat against her life; specifically, Ms. Asadoorian told a health care provider that she "would have killed [Ms. Mallard] if she could have." *Id.* ¶¶ 10, 11. That evening, Ms. Mallard told her husband and her supervisor Mr. Keast about the threat, saying that the threat left her fearing for her safety at work; both agreed that she should not return to work until this was resolved. *Id.* ¶ 12.

On July 27, 2013, Mr. Keast told Ms. Mallard that the sheriff had contacted Ms. Asadoorian who claimed she was not serious and was sorry. *Id.* ¶ 13. Mr. Keast then "pressured Plaintiff to return to work the following Monday even though she was still apprehensive to return due to the threat." *Id.* ¶ 13.

On July 29, 2013, Ms. Mallard returned to work and contacted Jim Thornton, a higher level postmaster, to complete her "pre-disciplinary interview" (PDI). *Id.* ¶ 14, 15. She met with an Employee Assistance Program (EAP) counselor, as was recommended by the Threat Assessment Team. *Id.* ¶ 16. The EAP counselor recommended that Ms. Mallard not return to work until more information was provided, that she not perform the PDI as scheduled for the following day, that she obtain a Protection from Harassment Order, and that she leave a couple of days earlier than planned for her vacation. *Id.* She applied for and was granted a temporary Protection from Harassment Order later that day. *Id.* ¶ 17.

On July 31, 2013, Ms. Mallard left for vacation.  Prior to her departure, she left the harassment order at the Skowhegan post office, and emailed Mr. Keast asking him to deliver the order to the sheriff's department on her behalf.  *Id.* ¶ 18.  On her way out of town, she participated in a conference call with Mr. Keast and the threat assessment team.  *Id.* ¶ 19.  A female threat assessment team member "challenged Plaintiff as to why she was not in her office.  No one in the group defended Plaintiff, including her supervisor who was already aware of the decision."  *Id.*  While sitting in her car on the conference call, her car began to smoke.  *Id.* ¶ 20.  Ms. Mallard assumed someone had tampered with her car.  *Id.*

On August 9, 2013, while still on vacation, Ms. Mallard contacted Mr. Keast to check on the status of the harassment order; he told her that the order had not been forwarded, and would not be because of "policy reasons."  *Id.* ¶ 21.  He told her that Ms. Asadoorian had been given a 14-day suspension and had been cleared to return to work.  *Id.*  On August 21, 2013, still concerned for her safety, Ms. Mallard emailed Mr. Keast a list of unanswered questions regarding the threats.  *Id.* ¶ 22.  She did not receive a response.  *Id.*  On August, 24, 2013, Ms. Mallard received an email from Mr. Keast requesting that she report to the Portland office when she returned from vacation.  *Id.* ¶ 23.  She asked to meet in Skowhegan, but her request was denied.  *Id.*

Ms. Mallard voiced her concerns about her safety to the threat assessment team on "numerous occasions"; in response, the team began to speak to her "in a demeaning way."  *Id.* ¶ 24.  Mr. Keast also became angry with Ms. Mallard and "began to treat her in a hostile manner."  *Id.* ¶ 25.

Subsequently, Ms. Mallard obtained documents from the sheriff's department relating to the threat made by Ms. Asadoorian. *Id.* ¶ 26. She learned that Ms. Asadoorian had left a message with a health care facility stating that she had "homicidal feelings toward her supervisor." *Id.* ¶ 27. She learned that the message included a number of threats, including: (1) "I want to kill my boss", (2) "[i]f I had the means my boss would be dead", and (3) "I am having homicidal feelings toward my supervisor." *Id.* She was originally told there was only one threat. *Id.* ¶ 28.

On August 27, 2013, Ms. Mallard had a "very hostile" meeting with Mr. Keast. *Id.* ¶ 29. She asked him why he was treating her so poorly for participating in the investigation. *Id.*

After Ms. Mallard transferred back to the Unity post office in August, Mr. Keast told her that Ms. Asadoorian was back to work and that the "issue was closed"; Ms. Mallard, however, "continuously told her supervisor that she did not feel safe with [Ms.] Asadoorian's continued employment with the USPS." *Id.* ¶¶ 30, 31, 33. Mr. Keast also said that Ms. Mallard's twenty-five year career with the Postal Service was in jeopardy because she had mistakenly falsified timecards. *Id.* ¶ 32. This was the first time Ms. Mallard had heard of any mistake she made. *Id.*

On August 28, 2013, Ms. Mallard contacted her EAP counselor, who recommended she take time off and see a doctor. *Id.* ¶ 34. Ms. Mallard saw a doctor the next day, who recommended she take an undetermined period of time off on account of increased anxiety and stress caused by the threat against her life and the subsequent actions of her supervisor and the threat assessment team. *Id.* ¶ 35.

On September 12, 2013, Ms. Mallard contacted the EEOC to discuss her complaint. *Id.* ¶ 36. She filed a complaint on December 21, 2013. *Id.* ¶ 37. On June 9, 2014, the EEOC issued its final decision. *Id.* ¶ 39.

Ms. Mallard remains employed by the Postal Service, on "leave without pay" status. *Id.* ¶ 40. She has applied for positions in Unity, Norridgewock, and West Farmington, but has not received any of the positions; she believes this is because of her complaints. *Id.* ¶¶ 40-43. On August 6, 2014, she was diagnosed by a psychiatrist as having post-traumatic stress disorder. *Id.* ¶ 44. In mid-August 2014, when she went to the Skowhegan post office to mail her husband's books, the postal worker opened her mail and refused to ship her books. *Id.* ¶ 45. She believes this happened because the Skowhegan postmaster is a friend of Mr. Keast.

### B. The Counts

Ms. Mallard's Complaint contains three counts. In Counts One and Two, Ms. Mallard alleges that she engaged in protected activity and that the Postal Service retaliated against her in violation of both the WPA and the MWPA. *Id.* ¶¶ 50, 51, 56, 57. In Count Three, Ms. Mallard says that she engaged in protected activity when "she tried to stop the mail carriers at the Unity office from inaccurately logging their hours", and that she was retaliated against after engaging in the protected activity, in violation of the FCA. *Id.* ¶¶ 63, 64.

## III. THE PARTIES' POSITIONS

### A. The Postmaster's Motion to Dismiss

The Postmaster argues that, because Ms. Mallard is a Postal Service employee, she is barred from asserting claims under the federal WPA and the FCA and that her state whistleblowing claims are preempted by federal law. *Def.'s Mot.* at 1. Regarding Count One, the Postmaster contends that, the WPA does not cover the Postal Service or its employees.[3] *Id.* at 6-7. Specifically, the Postmaster argues that under a plain language interpretation of 5 U.S.C. § 2302(a)(2)(A), Postal Service employees are excluded from WPA coverage. *Id.* at 7. The Postmaster notes that the statute extends only to federal employees in "an agency" defined in § 2302(a)(2)(C) to be "an Executive agency." *Id.* The Postmaster further states that although the definition of "Executive agency" under 5 U.S.C. § 105 includes "independent establishments" generally, an "independent establishment" is defined in 5 U.S.C. § 104(1) as "an establishment in the executive branch (other than the United States Postal Service or the Postal Regulatory Commission)". *Id.* Moreover, the Postmaster argues, courts that have analyzed § 2302 and § 2105(e) of the WPA have "interpreted the plain meaning of the statute to foreclose lawsuits against the Postal Service brought by Postal Service employees." *Id.*

Cases involving administrative appeals of Postal Service related claims pursuant to § 2302(b)(8) likewise do not support Ms. Mallard's position, the Postmaster contends, because none of the cases addressed whether the WPA allows

---

[3]       The Postmaster points out that Ms. Mallard's Complaint only alleges violations of the "Federal Whistleblower Protection Act" without referencing a particular federal statute. *Id.* at 6. The Postmaster asserts, and Ms. Mallard does not dispute, that the language of the Complaint tracks the language of 5 U.S.C. § 2302(b)(8). *Id.* The Court concludes that 5 U.S.C. § 2302(b)(8) is the statutory provision at issue and considers the parties' arguments accordingly.

actions by Postal Service employees against the Postal Service. *Id*. at 8. The Postmaster concludes by asserting that Ms. Mallard, as a Postal Service employee, is statutorily excluded from seeking relief under the WPA, and that Count One should be dismissed under Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction. *Id*. at 9.

Even if Ms. Mallard could sue the Postal Service pursuant to the WPA, the Postmaster contends, she has failed to show that she made a "protected disclosure" and suffered an adverse personnel action based on that disclosure, as required by § 2302(b)(8). The Postmaster contends that Ms. Mallard's "receipt of and reaction to" information that Ms. Asadoorian had made a threat against her life and documents from the sheriff's office relating to the threat do not qualify as a "disclosure" as defined by the WPA. *Id*. at 10. This is because, the Postmaster contends, "disclosure" has been interpreted to mean "unknown information" or information that is not "widely known and publicly available." *Id*. The Postmaster asserts that the threat was not unknown information. *Id*.

Regarding Count Two, Defendant argues that Ms. Mallard's claims under the MWPA are preempted and should be dismissed for lack of subject matter jurisdiction. *Id*. at 14. According to the Postmaster, "the WPA's 'comprehensive scheme for reviewing federal-personnel actions [ ] preempts . . . state claims complaining of prohibited employment practices' even where 'state law provides whistleblowing protections.'" *Id*. at 15 (quoting *Pretlow v. Garrison*, 420 Fed. App'x 798, 801-02 (10th Cir. 2011)). The Postmaster states that this Court has likewise held that the WPA

preempts a federal employee's state law claims of retaliatory threats and harassment. *Id.* (quoting *Ferris v. Am. Fed'n of Gov't Emps.*, 98 F. Supp. 2d 64, 65-66 (D. Me. 2000)).

The Postmaster likewise argues that Count Three should be dismissed both for preclusion and for failure to sufficiently state a claim under the FCA. *Id.* at 11-14. Specifically, the Postmaster contends that the WPA is the "exclusive means for certain federal employees to challenge whistleblowing retaliation of their federal employers." *Id.* at 11. Because Ms. Mallard and the Postal Service are expressly excepted from the WPA's coverage, the Postmaster argues, Ms. Mallard's FCA claim is "precluded twice over." *Id.* Furthermore, the Postmaster asserts, the FCA's retaliation provisions do not allow federal government employees to sue their federal employers. *Id.* According to the Postmaster, Ms. Mallard has other avenues to pursue her claims, citing opportunities to report concerns pursuant to both the Postal Service's own policy on whistleblower reprisal activity and the Occupational Safety and Health Act. *Id.* at 13.

Finally, the Postmaster argues that Ms. Mallard failed to exhaust her administrative remedies by filing an action with the EEOC that did not "explicitly raise and pursue" a claim of whistleblowing. *Id.* at 16. Ms. Mallard's complaint, the Postmaster maintains, should therefore be dismissed for failure to exhaust administrative remedies. *Id.*

## B.    Diana Mallard's Response

In her response, Ms. Mallard maintains that the WPA covers the Postal Service and its employees. *Pl.'s Opp'n* at 7. She asserts that the Notification and Federal Employee Antidiscrimination and Retaliation Act (NO FEAR Act), Pub. L. No. 107-74, expands coverage to provide whistleblower retaliation protection to Postal Service employees. *Id.* at 7-8. Next, Ms. Mallard contends that she has sufficiently pleaded a claim under the WPA, listing numerous allegations in her Complaint she argues show that she undertook protected activity and that in response, the Postal Service took retaliatory action. *Id.* at 8-10.

Regarding Count Three, Ms. Mallard contends that her state whistleblower claims are not preempted. *Id.* at 10. She compares language from the state and federal whistleblower statutes, and points out that the WPA provides relief to employees who complain about "a substantial and specific danger to public health or safety" whereas the MWPA protects employees who report practices that "would put at risk the health or safety of that employee or any other individual". *Id.* at 10-11. She argues that the MWPA is not preempted by federal law "because it provides additional protection for employees with concerns for their own safety." *Id.* at 11. Furthermore, she contends, she has properly alleged facts of protected activity and retaliation sufficient to support a claim under the MWPA. *Id.* at 12-13.

Finally, Ms. Mallard disputes the Postmaster's claim that she failed to exhaust her administrative remedies. *Id.* at 13. She asserts that she initiated proceedings according to EEOC guidelines, properly filed her formal complaint, and received a right to sue letter. *Id.* at 13-14.

She concludes by requesting that the Court deny the Postmaster's motion as to Counts One and Two of her Complaint.  *Id.* at 14.

### C.     The Postmaster's Reply

Responding to Ms. Mallard's reliance on the NO FEAR Act, the Postmaster states that the Act does not create any private cause of action or substantive rights, and insists that the NO FEAR Act did not modify the scope of the WPA.  *Def.'s Reply* at 3.  Furthermore, the Postmaster states, the Postal Service website does not direct employees with whistleblowing retaliation complaints to the WPA; instead, the website directs employees to the Postal Service's Employee and Labor Relations Manual and specifically states that the WPA "do[es] not apply to the Postal Service." *Id.* at 3-4.  Even if the WPA applied to Postal Service employees, the Postmaster insists, Ms. Mallard has not alleged any activity that constitutes a "disclosure" under the WPA.  *Id.* at 4-5.

In further reply, the Postmaster contends that the MWPA claims brought by federal employees are preempted by the WPA as a matter of law, even if Ms. Mallard lacks remedies under the WPA itself.  *Id.* at 5.  A lack of remedy under the WPA does not impact the preemption argument, the Postmaster asserts.  *Id.* at 6.

The Postmaster notes that Ms. Mallard has effectively conceded that her FCA claim should be dismissed because she neither opposes nor responds to the Postmaster's arguments and only opposes dismissal of Counts One and Two.  *Id.* at 6.  The Postmaster claims that Ms. Mallard's failure to respond to his arguments constitutes a waiver with respect to Count Three of the Complaint.  *Id.* at 6-7.

Finally, the Postmaster rejects Ms. Mallard's argument that she exhausted her administrative remedies by initiating proceedings with the EEOC. *Id.* at 7. Responding to Ms. Mallard's assertion that she "initiated proceedings" before the EEOC, the Postmaster argues that Ms. Mallard failed to explicitly raise and pursue the WPA claim in her EEOC filing as required, and thus failed to pursue or exhaust any administrative remedies specifically regarding her WPA claim. *Id.*

## IV.   DISCUSSION

### A.   Dismissal Standards

The Postmaster's Motion to Dismiss is premised on arguments that the Court lacks subject matter jurisdiction in this case, and alternatively that Ms. Mallard has failed to state a claim upon which relief can be granted.

Federal Rule of Civil Procedure 12(b)(1) allows a party to move to dismiss a complaint on the grounds that the court lacks subject matter jurisdiction to hear the case. Fed. R. Civ. P. 12(b)(1). "A motion to dismiss an action under Rule 12(b)(1) raises the fundamental question whether the federal district court has subject matter jurisdiction over the action before it." *United States v. Lahey Clinic Hosp., Inc.*, 399 F.3d 1, 8 n. 6 (1st Cir. 2005) (citation omitted). "[T]he plaintiff bears the burden of demonstrating that the court has jurisdiction." *Hendrick v. Almar, Inc.*, Civil No. 09–139–P–S, 2009 WL 2242428, at *1 (D. Me. July 26, 2009); *Dubois v. United States Dep't of Agric.*, 102 F.3d 1273, 1281 (1st Cir. 1996) ("The burden falls on the plaintiff clearly to allege facts demonstrating that he is a proper party to invoke federal jurisdiction." (citation and internal quotation marks omitted)). "In ruling on a motion

to dismiss for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1), the district court must construe the complaint liberally, treating all well-pleaded facts as true and indulging all reasonable inferences in favor of the plaintiff." *Aversa v. United States*, 99 F.3d 1200, 1209-10 (1st Cir. 1996). "In addition, the court may consider whatever evidence has been submitted . . . ." *Id.* at 1210; *Dynamic Image Techs., Inc. v. United States*, 221 F.3d 34, 37 (1st Cir. 2000) ("The court . . . may consider extrinsic materials and, to the extent it engages in jurisdictional factfinding, is free to test the truthfulness of the plaintiffs allegations").

Federal Rule of Civil Procedure 12(b)(6) requires dismissal of a complaint that "fail[s] to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). In other words, "[i]f a plaintiff's claims do not establish recognized legal theories for which relief may be granted, the court must dismiss the complaint." *Beebe v. Williams College*, 430 F. Supp. 2d 18, 20 (D. Mass. 2006). In deciding a motion to dismiss, the Court must "accept as true all the factual allegations in the complaint and construe all reasonable inferences in favor of the plaintiff." *Sanchez v. Pereira–Castillo*, 590 F.3d 31, 41 (1st Cir. 2009) (internal quotations omitted). If, after such a reading, the complaint supports a "reasonable inference that the defendant is liable for the misconduct alleged," the complaint must survive dismissal. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). However, "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations," a plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

13

"When a court is confronted with motions to dismiss under both Rule 12(b)(1) and 12(b)(6), it ordinarily should decide the former before considering the latter." *Arcadian Health Plan, Inc., v. Korfman*, No. 1:10-CV-322-GZS, 2010 WL 5173624, at *2 (D. Me. Dec. 14, 2010) (citing *Deniz v. Municipality of Guaynabo*, 285 F.3d 142, 149 (1st Cir. 2002)).

## B.   Whistleblower Protection Act Claim

Although Ms. Mallard does not identify in her Complaint the specific federal statute pursuant to which she brings her claims, the Postmaster asserts that the language of the Complaint tracks 5 U.S.C. § 2302(b)(8)(A).  *Compare Compl.* ¶ 49, *and* 5 U.S.C. § 2302(b)(8)(A).  Ms. Mallard did not contest this comparison in her opposition, and the Court, having compared the Complaint to the statute, concludes that Ms. Mallard asserts a claim under the Whistleblower Protection Act codified at 5 U.S.C. §§ 2301-2306.

Under § 2302(b)(8)(A) of the WPA, it is a "prohibited personnel practice" for "[a]ny employee who has the authority to take, direct others to take, recommend, or approve any personnel action" to

> take or fail to take, or threaten to take or fail to take, a personnel action
> with respect to any employee . . . because of any disclosure of information
> by an employee . . . which the employee . . . reasonably believes evidences
> (i) any violation of any law, rule, or regulation, or gross mismanagement,
> a gross waste of funds, an abuse of authority, or a substantial and
> specific danger to public health or safety . . . .

5 U.S.C. § 2302(b)(8)(A)(i)-(ii).  A "personnel action" may be considered a "prohibited personnel practice" only if it occurs within an "agency" as defined in the statute.  *See* 5 U.S.C. § 2302(a)(2)(A).  Therefore, for Ms. Mallard's claim to fall within the scope

14

of § 2302, the Postal Service must be deemed either an agency or a government corporation, and she must be deemed an employee for the purposes of that section.

An "agency" is defined as "an Executive Agency and the Government Publishing Office", with a few exceptions that do not apply here.  *See* 5 U.S.C. § 2302(a)(2)(C).  Title 5 defines an "Executive Agency" as including "an Executive department, a Government Corporation, and an independent establishment."  5 U.S.C. § 105.  Section 101 lists fifteen executive departments; the Postal Service is not among them.  *See* 5 U.S.C. § 101.  Next, an "independent establishment" means "an establishment in the executive branch (other than the United States Postal Service or the Postal Regulatory Commission) . . . ."  5 U.S.C. § 104.  Finally, a "Government Corporation" is defined as "a mixed ownership Government corporation and a wholly owned Government corporation"; the statute lists a number of entities and does not include the Postal Service.[4]  *See* 31 U.S.C. § 9101.  Because the Postal Service is excluded from the definitions of an "Executive department", a "Government Corporation", and an "independent establishment" under Title 5, the Court concludes that the Postal Service is not within the definition of "agency" for the purposes of the WPA.[5]

---

[4]     The Court uses the definition of "government corporation" in § 9101 because Ms. Mallard has brought her claims pursuant to § 2302, which states that the definition of "government corporation" in § 9101 applies "in the case of an alleged prohibited personnel practice described in subsection (b)(8)". *See* 5 U.S.C. § 2032(a)(2).

[5]     "Where Congress intended the Postal Service to be included within the definition of 'agency' or to be subject to particular provisions of Title 5, it explicitly so provided.  Its absence from the section 2302 definition could only have been intentional in light of this congressional practice."  *Booker v. Merit Sys. Prot. Bd.*, 982 F.2d 517, 519 (Fed. Cir. 1992) (citations omitted).

Even though Ms. Mallard's claim could be precluded on this issue alone, the Court considers whether she is an "employee" for the purposes of the WPA. A plain language reading of the statute demonstrates she is not. Title 5 expressly states that "[e]xcept as otherwise provided by law, an employee of the United States Postal Service or of the Postal Regulatory Commission is deemed not an employee for purposes of this title." 5 U.S.C. § 2105(e).

The Court concludes that the Postal Service is not an executive agency or a government corporation and § 2302 does not apply to it and, in any event, under § 2105(e), Ms. Mallard is deemed not an employee for the purposes of Title 5 and the WPA. The Court concludes that Ms. Mallard may not maintain a claim under the WPA.[6] Therefore, Ms. Mallard's WPA claim must be dismissed pursuant to Rule 12(b)(1) for lack of subject matter jurisdiction.

Ms. Mallard's sole argument regarding the Court's subject matter jurisdiction over her WPA claim is that the NO FEAR Act of 2002 expands the scope of the WPA to include the Postal Service. According to Ms. Mallard, the Postal Service website states "[t]he Postal service cannot retaliate against an employee or applicant because

---

[6]   This conclusion is consistent with other judicial interpretations of § 2302. *See McDermott v. Donahoe*, 465 Fed. App'x 686, 687 (9th Cir. 2012) ([T]he WPA . . . does not apply to the United States Postal Service"); *Kassin v. United States Postal Serv.*, Civil Action No. 11-01482 (JAP), 2011 WL 6002836, at *2 (D.N.J. Nov. 30, 2011) ("5 U.S.C. § 2302 . . . does not apply to the Postal Service"); *Eastman v. Donahue*, 10-cv-906 FRB, 2011 WL 5374729, at *6 (E.D. Mo. Nov. 8, 2011) ("[t]he Whistleblower Protection Act is not applicable to the Postal Service . . . ."); *Hickok v. United States Postal Serv.*, 04-cv-573 DAK, 2006 WL 3760137, at *6 (D. Utah Dec. 18, 2006) ("From a plain reading . . . it is clear that the USPS is not covered by the [WPA]."); *Brown v. Henderson*, No. Civ. A. 99-3064, 2000 WL 1762509, at *6 n.4 (E.D. La. Nov. 29, 2000) ("The Whistleblower Protection Act . . . does not apply to Postal Service employees."); *Madden v. Runyon*, 899 F. Supp. 217, 225 (E.D. Pa. 1995) ("The Whistleblower Protection Act . . . does not apply to the Postal Service."). Ms. Mallard has not provided, nor was the Court able to locate, any cases that suggest Postal Service employees are covered under the WPA.

that individual exercises his or her rights under any of the Federal antidiscrimination laws or whistleblower protection regulations." *Pl.'s Opp'n* at 7 (citing U.S. POSTAL SERV., NO FEAR ACT NOTICE, available at http://about.usps.com/who-we-are/no-fear-act/no-fear-act-notice.pdf (last visited Apr. 30, 2015)).  She says that the "purpose of the NO FEAR Act is to require 'Federal agencies [to] be accountable for violations of antidiscrimination and whistleblower protection laws'" and that the Act provides that the definition of "federal agency" includes the Postal Service and the definition of "employee" means an individual employed by a federal agency.  *Id.*

The Postmaster responds that the NO FEAR Act "does not create any private cause of action or substantive rights" and therefore does not expand the WPA's coverage to Postal Service employees.  *Def.'s Reply* at 3.  Furthermore, the Postmaster argues, the Postal Service website notice on which Ms. Mallard relies actually states that "[t]he Postal service cannot retaliate against an employee or applicant because that individual exercises his or her rights under any of the Federal antidiscrimination laws or whistleblower protection regulations *listed above*."  *Id.* at 4 (emphasis supplied).  The Postmaster says that the WPA is not listed in the notice; instead, the notice refers to the Postal Service's Employee and Labor Relations Manual.  *Id.* Finally, the Postmaster states, the Postal Service website itself states:

> The Whistleblower Protection Act . . . do[es] not apply to the Postal Service. However, the Postal Service has adopted employment regulations that provide protections for Postal Service employee whistleblower activities . . . .

*Id.* (citing *Information about the NO FEAR Act*, U.S. POSTAL SERV. (2015), http://about.usps.com/who-we-are/no-fear-act/learn.htm).  The Postmaster maintains

17

that the WPA excludes the Postal Service from its coverage and that the NO FEAR Act does not affect this exclusion. *Id.* at 3.

The NO FEAR Act, which went into effect in 2003, includes provisions requiring federal agencies to provide additional reimbursement for discrimination cases, to notify and train employees about their rights, and to report on employee complaints against the agency. Notification and Federal Employee Antidiscrimination and Retaliation Act of 2002 §§ 201-302, Pub. L. No. 107–174, 116 Stat. 566, 566 (2002). Ms. Mallard cites no caselaw supporting her argument that the NO FEAR Act expands the coverage of the WPA, likely because there is none. The cases the Court has found uniformly conclude that the NO FEAR Act does not create any private cause of action or substantive rights.[7] The Court concludes that the NO FEAR Act does not expand the coverage of the WPA to include the Postal Service. Even if the Postal Service encouraged employees to pursue whistleblowing activities under the WPA, which it did not, such encouragement may not supersede clear congressional intent to exclude the Postal Service from claims under the WPA. *See Hickok v. United States Postal Ser*v., at *7. The Court therefore concludes that Ms. Mallard's WPA claim should be dismissed for lack of subject matter jurisdiction pursuant to Rule 12(b)(1), and does not reach whether she alleged facts sufficient to

---

[7]     *See, e.g., Cooper v. Dep't of Army*, No. 4:13-CV-3086, 2013 WL 6631618, at *5 (D. Neb. Dec. 17, 2013) ("The No FEAR Act 'does not create a substantive right for which the government must pay damages, but rather, it requires that federal agencies repay any discrimination or whistleblower damage awards out of agency funds rather than the General Fund of the Treasury.'" (quoting *Glaude v. United States*, 248 F. App'x 175, 177 (Fed. Cir. 2007)); *Alexidor v. United States Office of Pers. Mgmt.*, No. 13-CV-4027, 2013 WL 4647528, at *2 (E.D.N.Y. Aug. 29, 2013) (collecting cases).

survive dismissal under Rule 12(b)(6) or whether she exhausted her administrative remedies.

### C.     False Claims Act Claim

Count Three of Ms. Mallard's Complaint states that she was retaliated against in violation of the False Claims Act, 31 U.S.C. § 3730(h).  *Compl.* ¶¶ 60-66.  The Postmaster argues that federal employees cannot avail themselves of the FCA's retaliation provisions, however, and that Ms. Mallard's claim should therefore be dismissed pursuant to Rule 12(b)(1).  *Def.'s Mot.* at 11-13.  Again, Ms. Mallard bears the burden of alleging facts essential to show jurisdiction under the FCA.

Ms. Mallard has failed to respond to the Postmaster's argument in her opposition and only requests that the Court deny dismissal as to her WPA and MWPA claims.  *See Pl.'s Opp'n* at 14 ("For the reasons stated above, Plaintiff respectfully requests that the Court deny Defendant's motion as to Counts I and II of Plaintiff's complaint").  Accordingly, Ms. Mallard's FCA claim may be dismissed on that basis alone.  *See Andrews v. Am. Red Cross Blood Servs.*, 251 F. Supp. 2d 976, 979 (D. Me. 2003) ("Failure to respond to a motion to dismiss means that opposition to the motion is waived, Local Rule 7(b), and the motion may be granted for that reason alone . . . .").  In excess of caution, the Court will nevertheless consider the merits of Ms. Mallard's FCA retaliation claim.  The FCA authorizes suit by an employee who has been discriminated against in her employment because of her whistleblowing activities under the FCA.  31 U.S.C. § 3730(h).  Unlike a privately-employed person,

Ms. Mallard, a federal employee[8], does not have a remedy for alleged retaliation under the FCA.[9]   The Court concludes that Ms. Mallard's FCA claim should be dismissed for two reasons.

First, the Court finds persuasive the body of caselaw supporting the principle that the Civil Service Reform Act of 1978 (CSRA), codified in various sections of Title 5 including the WPA, is the "exclusive set of statutory remedies for federal employees who allege retaliation resulting from whistleblowing activity."   *Abou-Hussein v. Mabus*, 953 F. Supp. 2d 251, 263 (D.D.C. 2013) ("The whistleblower protections contained in the Civil Service Reform Act constitute the exclusive set of statutory remedies for federal employees who allege retaliation resulting from whistleblowing activity") (citing *LeBlanc v. United States*, 50 F.3d 1025, 1029–30 (Fed. Cir. 1995)); *see also Gibbs v. United States*, 865 F. Supp. 2d 1127, 1139 (M.D. Fla. 2012) ("the civil remedy provided in the FCA's anti-retaliation provision, § 3730(h), does not apply to federal employees, whose exclusive remedy is under the CSRA").

Second, Ms. Mallard has presented no authority to support her allegation that attempting to stop mail carriers from inaccurately logging hours is "protected activity" under the statute, nor has she alleged or presented evidence of a false claim being submitted to the Postal Service for payment, as is required for liability under

---

[8]   The Court assumes without concluding that Ms. Mallard is a federal employee for the purposes of the FCA because (1) Postal Service employees are not expressly excluded from the definition of employee as they are in the WPA, (2) Ms. Mallard essentially alleged she was a federal employee with respect to her WPA claim, and (3) she has not contested that interpretation insofar as it impacts her FCA claim.

[9]   A federal employee may, in certain circumstances, file an FCA qui tam action, but that issue is inapplicable here.   *See, e.g., United States ex rel. LeBlanc v. Raytheon Co, Inc.*, 913 F.2d 17 (1st Cir. 1990).

the FCA.  *See* 31 U.S.C. § 3729.  Accordingly, the Postmaster would be entitled to dismissal under Rule 12(b)(1), and likely Rule 12(b)(6), even if Ms. Mallard had not waived opposition to this part of the Postmaster's motion.

### D.  Maine Whistleblower Protection Act Claim

Count Two of Ms. Mallard's Complaint alleges that she engaged in protected activity and that the Postmaster retaliated against her in violation of the MWPA. *Compl.* ¶¶ 56-57.  In its motion, the Postmaster argues that the MWPA claim should be dismissed pursuant to Rule 12(b)(1) for lack of subject matter jurisdiction because the state statute is preempted by the federal WPA.  *Def.'s Mot.* at 14-15.  In response, Ms. Mallard contends that the two statutes differ in scope; she says that the MWPA protects employees who report a "condition or practice that would put at risk the health or safety of that employee or any other individual", whereas the WPA protects employees who report "a substantial and specific danger to public health or safety". *Pl.'s Opp'n* at 10-11 (citing 26 M.R.S. § 833; 5 U.S.C. § 2302(b)(8)(A)(i)-(ii)).  Ms. Mallard compares the WPA to Title VII and argues that because Title VII does not preempt relief for conduct beyond its scope, the WPA should not preempt conduct protected by the MWPA that is beyond the scope of the WPA.  *Id.* at 10.  The Postmaster replies that the WPA is a comprehensive statutory scheme and therefore preempts the MWPA.  *Def.'s Reply* at 5.

Caselaw from this District provides that a federal employee's state law claims of "retaliatory threats and harassment . . . . are preempted by the Civil Service Reform Act and the Whistleblower Protection Act."  *Ferris v. Am. Fed'n of Gov't Emps.*, 98 F.

Supp. 2d at 65.   In *Ferris*, the Court further stated that the "CSRA preempts [Plaintiff's] claims against these individual defendants to the extent her claims are based on personnel actions".   *Id.* at 67.   Personnel actions (or threats) prohibited by the CSRA include "'disciplinary or corrective action', transfer, reemployment, or 'any other significant change in duties, responsibilities, or working conditions.'"   *Id.* at 66 (citing 5 U.S.C. § 2302(a)(2)(A)).

The CSRA, of which the WPA is a part, preempts state laws because it is the exclusive means for federal employees to challenge prohibited personnel practices. Here, Ms. Mallard's retaliation claims are based exclusively on personnel actions: threats and hostility from her superior, harsh treatment by the Threat Assessment Team, false accusations of inaccurate time card records, release from her position in Corinna, demotion in Unity, failure to obtain a different position, and being required to return to work despite feeling unsafe.  That she is a Postal Service employee does not change the calculus. The Postal Service regulations mirror language in the WPA, and those regulations expressly cover postal employees whereas the WPA expressly does not.

This does not mean that Ms. Mallard is without remedy.  The Postal Service Employee and Labor Relations Manual (ELM) contains a provision titled "Whistleblower Protection" that states: "Allegations of reprisal for the release of information as set forth in ELM section 666.18, raised by any Postal Service employee,  should be addressed to: United States Postal Service Office of Inspector

General Hotline . . . ." U.S. Postal Service, Employee and Labor Relations Manual 38 § 666.3 (Mar. 2015). Additionally, the postal regulations provide:

> No one may take or fail to take a personnel action, or threaten to do so, with respect to any employee or applicant for employment because the employee or applicant discloses information that he or she believes evidences:
>   a. A violation of any law, rule, or regulation, or
>   b. A gross waste of funds, gross mismanagement, an abuse of authority, or a substantial and specific danger to public health or safety.
> Disclosure of information that is specifically prohibited by law does not carry the protection described above. However, no disclosure under a. and b. above is prohibited by law if made to the Inspector General of the Postal Service. There can be no reprisal for disclosures to the Inspector General unless the complaint was made or the information disclosed with the knowledge that it was false or with willful disregard for its truth or falsity.

*Id.* § 666.18. These provisions direct Postal Service employees, who allege reprisal for the release of information, to the Inspector General.[10] Ms. Mallard is a Postal Service employee alleging reprisal for release of information. Ms. Mallard's potential remedy under the postal regulations strengthens the Postmaster's argument that she does not have one under the MWPA. The Court therefore concludes that the MWPA is preempted by the WPA, and the Court dismisses Ms. Mallard's Count Two.

## V.   CONCLUSION

The Court GRANTS the Defendant's Motion to Dismiss as to Counts One, Two, and Three. Judgment shall issue in favor of the Defendant and against the Plaintiff.

---

[10]   The postal regulations also lay out procedures for employees to complain about, inter alia: discrimination, nepotism, coercion of political activity, and reprisal for release of information. *See id.* §§ 666.1-.18. The procedures for complaining about these prohibited personnel practices differ depending on the status of the employee and the action taken against her. *See id.* § 666.21. Notably, whistleblower protection is covered in a stand-alone section and provides only one complaint procedure, namely reporting the complaint to the Inspector General.

SO ORDERED.

/s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
UNITED STATES DISTRICT JUDGE

Dated this 5th day of May, 2015